Before we begin our arguments today, we have a motion that Judge Stahl would like to make. Thank you. I move for the admission of Gia Liu, who is a member of the Bar and is in good standing with the highest courts of the Commonwealth of Virginia. I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. I'm able to say this because Gia has worked as a law clerk in my chambers for the last year. During that time, she's exhibited tremendous technical skills, diligent attention to detail, and passion for the law in this court's mission. I will miss her unique perspective on both cases in life. I am confident that she will serve the court well as a member of the Bar. Judge Chen, should we grant the motion? Yes. Judge Stahl, your motion is granted, and Ms. Liu, welcome to this Bar and thank you for all your contributions to this court. Please raise your right hand. Do you solemnly swear that you will comport yourself as an attorney and counselor in this court, abiding and according to the law? Okay, now we have three argued cases this morning. The first of these is number 17-13-16, Lutz LLC versus Phoenix Trading, Inc., Mr. Hogan. Good morning. May it please the court, I'm Stephen Hogan, and together with Robert Steele, who is present here today, I represent the appellant, Lutz and Lutz Flex Brush LLC. We've raised four issues in this appeal. It is the second time that we've been before this court. Judge Stein, how is it that, having failed to raise the fraud claim in the first appeal, you're not barred by the mandate of raising it now? Because in the issue on the first appeal was the outcome of the prior motion. So when this court remanded the case, it set aside the default, it reopened the entire case, and at that point we went forward with the case. You had every piece of evidence relating to the fraud claim, including the 2012 testimony, the time when this case was here before, you didn't cross appeal on the fraud claim. Why aren't you barred by the mandate? Well, because the first appeal, the result of that, and the result of the mandate was to reopen the... We didn't reopen the fraud claim. We didn't say anything about the fraud claim. But the court sent it back to the trial court on remand, set aside the default. The default was only on the patent claim, it wasn't on the fraud claim. The default, as I recall, was on the entire case, but the court had declined to set aside the summary judgment ruling. Is there somewhere in the record that makes that clear? It's like the default judgment was for all of your complaints, claims? I will tell you, I don't know. I just was not... I'm just curious, how come you didn't cross appeal the summary judgment of conclusion that your fraud claim had no merit? Well, my understanding is that when the original appeal was taken, the idea was that the existing judgment, if affirmed, the case would be over. If the existing judgment was reversed and the case was remanded, the case would be at large. Your first appeal had nothing to do with the fraud claim, right? The first appeal? Correct. Correct. And you didn't cross appeal on the summary judgment of the fraud claim. How can you raise it now? Because when the case goes back on remand, the entire case would be, again, at large, is my understanding, Your Honor. What case says that? I do not have one to cite to you off the top of my head. If you're wrong about everything being fair game when the case goes back, do you have an alternative argument or is it just your understanding that when it would go back, you would have the chance to then challenge the earlier summary judgment that happened before your original notice of appeal? Yeah, I have no alternative argument on that point, Your Honors. I was more focused today on the substance of the fraud claim and didn't expect to get a question as to whether or not the mandate foreclosed the position. I had not seen it argued in Pelley's brief, so I apologize for not having a much more thorough dig on this legal issue. I understand the concern and I'm answering the best I can without having any notice that it was going to be raised. I'm not complaining to the court, but it just wasn't raised in anybody's briefing. So I don't have an alternative argument. My belief was that on remand, the subject of what the court would do for the Rule 37 sanction would include perhaps a reconsideration of whether or not the court's prior ruling on summary judgment ought to be revised in some way as part of the proceedings on remand. And we felt like that was in play. The remand, this court's decision didn't say it wasn't. It looked to us like, in fact, we argued it. Because nobody raised it. You didn't ask us to do anything about the fraud claim. Why would we discuss it? Well, that's true, but our belief is and was that if we go back and the question of Rule 37 sanctions is back on the table, the broad discretion of the trial court would include examining. It was clear that this court, based on the actual findings made, had concerns about a default sanction. Therefore, it was our anticipation that we would be back in court and the district court would be free to say, okay, I'm going to do something less than a default judgment on patent infringement. Pardon me? Default judgment on patent infringement. Correct. Right. And, you know, at the bottom of page three of our slip opinion from 2014, it's at page 61, we said in that opinion, the district court granted partial summary judgment to Americare on 2010, determining that the defendants should prevail on all claims other than patent infringement, a ruling not contested on appeal. So I think from our vantage point in the first go-around, we made it pretty clear that everything, all other claims aside from the patent infringement, were now formally off the table, that they were never appealed, and they were fully resolved. I understand the concern, and our understanding was, especially given the fact that the summary judgment was also granted on the infringement claim, and we now have the admissions from the defendants, which established that there was a fraudulent basis for that. That was in 2012. 2012, years before the first appeal, was the admission about the additional influence. It is, but this court was examining the district court's findings that were made long before the admission, and so the idea that when the district court received the case on remand, and it would reconsider sanctions, it would remove the default, and then the entire case, the court would have discretion to deal with the case anew, was my understanding. If I am wrong about that. There seems to be no basis, whatever, for such an making a frivolous argument. I really don't believe that. I am being as honest with the court. I did not have an opportunity to review the law on this. It wasn't raised. Nobody has suggested until now that we were foreclosed by the prior mandate from the argument. The district court suggested that it was foreclosed from addressing this because of the mandate. I don't know what to say. I just, I did not. Why don't you go on and address the other issues in the case. The other three issues that we did raise is on remand. This court last time, I think, correctly said that the trial court's findings that there may have been material misstatements in the record was not sufficient to support sanctions. On remand, we presented the admissions that did come later that the court had not previously considered and made no findings on. What is the point here? Pardon me? What point are you making? What are you directing yourself to? Our second issue, which is the trial court's failure to exercise discretion. With respect to the fraud claim? With respect to the, on remand, with respect to the correct sanction to impose. On remand. You're not contesting the amount of the sanctions award, right? We are not contesting the amount of the monetary sanctions award. Our argument is that that was. And you stipulated to the patent damages, right? After the court made this ruling, we were able to reach an agreement as to what the damages would be in light of the limitations that the court put on us as to what would be allowed at trial. We asked to vacate. On remand, the judge awarded $190,000 of attorney's fee sanctions, as I understand it. I believe it was $187,000. $187,000. So what more is it that you are seeking now? What we were. Beyond that $187,000. What we were asking for was that the trial court reopen the infringement case and allow us to go forward and prove as best we can, given the misconduct of the defense, the damages on the infringement. We focused on what we finally had obtained, the admission that they had been. Did you ask for further discovery on the infringement question? I think that was where we intended to go. But you didn't ask. And the court did not allow anything except the one admitted infringing shipment in July. Did you ask the court to conduct further discovery on whether there were additional infringements? I don't know the answer to that. There was no motion where we came in and said, can we do more discovery? On remand, what we did do is we first asked to file a brief to explain what we thought the appropriate remedy on remand was. The trial court was apparently unaware of the remand. It put it over. Then it said it didn't need any briefing. It made its ruling. And then we filed a new motion seeking what we thought were the appropriate sanctions, given this evidence that had not been previously considered. Up to that point, the district court had just said, I'm considering whatever's on the table. So then what specifically were those additional sanctions that you wanted beyond the $187,000? What did you specifically ask the court to give you beyond that? What we were seeking was that the trial court would... I guess I'm looking for something in the JA. What in the JA can I look at that shows me what you sought from the district court below beyond $187,000? It would be in the motion that we filed seeking terminating sanctions after the remand. That's my shorthand for what we were seeking was that the court set aside the summary judgment, that the court reopened the infringement claim so that we could prove it as best we could. Okay. Where in the JA does it say all that? Let me find that. I'm running out of time. I think it's around 818 of the joint appendix would be where our motion on that is. Okay. But what did you ask for? And what we were asking for was that the court... I want to get this right. Okay. We were asking for the court to vacate the summary judgment. I recall that. On the fraud. On fraud and infringement and let us go forward and prove the case as best we could. And we were also saying that given that we could now prove that for years, the defense had been falsely asserting repeatedly... What do you mean now prove? You knew that in 2012, that there was an additional infringement. But that was after the district court had made the rule 37 ruling, which we were here last time to discuss. Maybe on reply, you'll be able to show me where in this motion for terminating sanctions, you specifically asked to reopen your infringement claim, so you could try to get more discovery for other possible infringing shipments. I see what you asked for on the bottom of page JA 825. Is that helpful at all? Do I understand correctly that that's what you asked for? Yes, that's what I was looking for. Yes, so we were seeking to vacate the order on summary judgment in full and then we were... Based upon a fraud on the court? Correct. And then enter a ward of patent infringement damages of $54,000. With treble. That's exactly what you got. You didn't get the treble, but you got the $54,000. Well, that's correct. Well, so I don't understand the point. Where did you ask to conduct further discovery to see whether there were additional damages? It seems to me in this motion, you're accepting the $54,000 as the correct measure. Well, I don't necessarily disagree with that. I was mistaken when I remember that we were looking to reopen the case, and I had frankly forgotten that the request specifically said, we'll take what was previously given. But we wanted on top of that the enhanced damages and the attorney's fees, and I apologize for missing that. It was my lack of preparation. I apologize to the court for that. Okay. Well, I think we're out of time. We'll give you a minute for rebuttal. Thank you. Mr. Fielder? Good morning. May it please the court, Brooks Cooper for Appellee Defendants Hemming and Phoenix Trading Group. I'd like to first add a little bit of clarity to the record just to help the court. The trial court summarized exactly what it thought plaintiffs were seeking as a sanction at Appendix, Joint Appendix 34 and 35. That's an easy place to find that bullet pointed. I'd like to then address the contention that the trial court refused to consider evidence and thus never exercised discretion justifying remand on the sanctions question. I'll direct you to Appendix 22. There was only one shipment that arrived after the notice in June 2008 of the patent. Correct. Let me talk about the two shipments that were infringing and that will answer that question. The answer is correct. Yes. You can tell us now there's only one shipment. Correct. That's all you don't know of any others. There is absolutely nothing in this record about any others. I personally know of no others. That shipment left China's shores June 23. It hit U.S. shores July 8 and was released out of customs to my client on July 23. Or is it on your red brief then that you said that the shipment was already on the water at the time of the June 13, 2008 letter that gave your client notice? What does that mean that the shipment was already on the water? You're telling me it wasn't shipped until June 23. And that points out, I think, a central place where, as I've said in the red brief... Can you just answer it? Of course. There is nothing in your record to show when my client received that letter. Neither of us cite any place... I'm asking... Look, you said on page 16 of your brief the shipment was already on the water at the time of June 13. I'm sorry, Judge. Is that right or is that wrong? That is not what I said, Judge, with all respect. Okay. What I said was... There is no question but that Phoenix had knowledge of the existence of a patent at the time of the final shipment arrived. But that shipment was already on the water at the time of the June 13, 2008 letter that gave them notice. At the time the letter... That's your red brief at page 16. Correct. Am I wrong? Did I misread that? You did not. At the time my client... Then why did you say that that's not what you said? I said at the time my client received that notice from the letter that was written on June 13, the shipment was on the water. That is different than the shipment being on the water on June 13. That statement is not true. What? When you said that shipment was already on the water at the time of the June 13, 2008 letter? That is inartful drafting by me. I should have said at the time of my client's receipt of the letter. And that is bad drafting on my part. Because at the time of the letter, the shipment was not on the water. The day it was penned and the day it was signed, it wasn't. The record is clear in that regard. What I intended to say was at the time my client learned of that from the letter that was issued on June 13, the shipment was on the water. She could do nothing other than do what she did, which is receive it, she can't turn the boat around, and put it in her warehouse because she knows that further use of that in commerce is further infringement. It's already infringement when it hits the shores, which is why those brushes sat in her warehouse until the trial court ordered their donation. May I go on? It's your time. Thank you. I'd like to address the question of exemplary damages and attorney fees arising out of the trial. And I would point out what is uncontradicted on the record. The party stipulated that the finding of damages from the default damage hearing where the defendant did not contest that there were two infringing importations, one of which was sold to New York, completed, she received the money, one of which we just discussed sat in her warehouse. Defendant did not contest that each of those were infringements. She did not oppose any of that. Further, defendant herself, prior to this trial, had moved for the imposition of a permanent injunction against defendant. Plaintiff believes defendant continued and perhaps believes she continues today to continue to infringe the patent. For that reason, to give plaintiff as much surety as the court can, she said, please enjoin me. I won't do it again. The trial court saw her testify and listened to her testify, and this is Appendix 1021. And the trial court specifically found that her testimony was credible. That is the record that brings you here today. I don't see how that can be squared with the cases telling you that exemplary damages and attorney fee shifts happen in egregious and willful cases where the conduct of the infringer is like a pirate. What we have here is someone who, from the testimony in your record, intended to stop infringing what would be an issued patent when the patent issued, and that's why she didn't sell the final shipment. She just didn't learn of it, and that is her fault, when the patent issues. It was on the Federal Register. Everyone has constructive notice. She made two infringing shipments, and then she stopped, and she did what she could to appropriately. This is not a case for exemplary damages or attorney fees. On the terminating sanctions, on the sanctions motion, plaintiff put everything it wanted to in the record to ask for the relief it sought. The trial court at Appendix 23 said that it had considered all of that. That is a trial court's exercise of its discretion, and the decision to say, not good enough, motion denied, is one well within the trial court's discretion, which I would ask you to affirm. Final point, unless this panel has any other questions from me. I did not see the procedural argument you, Judge Van Dyck, have identified on the fraud claim. This record is procedurally a bit twisty. I'm not going to address that because I didn't raise it, but as to the fraud claim, I will tell you that I believe Washington state law correctly supports the summary judgment. Clearly, there's another basis for affirmance if you choose to follow the questioning you outlined with Appellant's counsel. Unless this court has any other questions, I would just be listening to myself talk. OK. Thank you, Judge. Thank you, Judge. OK. Mr. Colvin, you have a minute here. Thank you, Your Honor. On the question of did we request further discovery on remand, we did not. And the reason for that is that through the years of the litigation, we had gone as far as we could go. And that was why the relief was fashioned the way it was. And I apologize for not having that information right off the top of my head. With that, if the court has any other question or concern for me, I'm happy to address it. OK. Thank you, Mr. Hogan. Thank both counsel, the case is submitted. Thank you.